IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HILDA SOLIS, U.S. SECRETARY OF LABOR, *et al.*,<br><br>　　　　Defendants.<br>_____ / | No. C 11-1939 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

Defendants' motion to dismiss the complaint and plaintiff's motion for a preliminary injunction are scheduled for a hearing on August 26, 2011. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motions are appropriate for resolution without oral argument, and VACATES the hearing. The Court also VACATES the case management conference scheduled for the same day. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss the complaint and DENIES plaintiff's motion for a preliminary injunction.

**BACKGROUND**

**I.　Legal background**

The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.*, entitles eligible returning servicemembers to accrued seniority and the rights and benefits that come with seniority. USERRA makes it unlawful for an employer to deny an individual employment, reemployment, promotion, or any benefit of employment on the basis of membership or participation in the uniformed services. *Id.* § 4311(a); *see also* 20 C.F.R. § 1002.191 ("As a general

rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service. This position is known as the escalator position. . . . . The escalator principle requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.").

Any individual who claims he or she has been denied rights or benefits under USERRA may file an administrative complaint with the Secretary of the Department of Labor ("DOL"). 38 U.S.C. § 4322(a); 20 C.F.R. § 1002.288. The Secretary, acting through the Veteran Employment Training Service ("VETS") within the Department of Labor, must investigate the complaint. *Id*. In performing this investigation, DOL has the authority to interview all persons who have relevant information, and to receive documents from any person or employer it considers relevant to the investigation. *Id*. § 4326; 20 C.F.R. § 1002.289. If DOL concludes that the complaint is valid, it shall "attempt to resolve the complaint by making reasonable efforts to ensure that the person or entity named in the complaint complies with the relevant provisions" of the Act. 38 U.S.C. § 4322(d); 20 C.F.R. § 2002.290.

DOL does not have the authority to order an employer to comply with USERRA. 20 C.F.R. § 1002.290. If DOL cannot resolve the complaint, it must inform the complainant of the results of its investigation, and of his or her enforcement rights against the employer. 38 U.S.C. § 4322(e). The complainant may then request that DOL refer the complaint to the Attorney General, who may bring a civil action on the complainant's behalf. *Id*. § 4323(a). Alternatively, the complainant may initiate a civil action on his or her own behalf. *Id*. § 4323(a)(3).[1]

## II.    **Factual background**

Plaintiff International Longshore and Warehouse Union ("ILWU") is the union and exclusive bargaining representative of all longshore workers employed in ports on the West Coast of the United States by the Pacific Maritime Association ("PMA") and its member companies. Compl. ¶ 5. According to the complaint, PMA is a "multi-employer bargaining association of marine terminal

---

[1] A complainant may initiate a civil action without first requesting the Attorney General's representation, or even without filing a complaint with DOL at all. *Id*.

2

owners and operators, steamship carriers, stevedoring companies and maintenance and repair companies." *Id*. The ILWU and PMA are parties to a collective bargaining agreement known as the Pacific Coast Longshore and Clerks Agreement ("PCL&CA"). *Id*. The PCL&CA covers the terms of employment for approximately 25,000 longshoremen, marine clerks, and longshore mechanics in a single collective bargaining agreement unit in twenty six commercial ports in the states of California, Oregon and Washington. *Id*.

The complaint alleges that "the PCL&CA provides that ILWU and PMA have joint control over, among other things, the number of registered longshore workers and casuals, transfer and elevation procedures, and dispatch. Any matter that affects the registration or dispatch of a member or members of ILWU longshore bargaining unit necessarily requires involvement of both the ILWU and the PMA." *Id*. ¶ 27. The complaint also alleges that PMA and ILWU have jointly negotiated a USERRA Policy, which provides for certain benefits for eligible longshoremen returning from active military service or who perform legally-covered reservist duties. *Id*. ¶ 28. The complaint alleges that PMA and ILWU jointly administer the USERRA Policy coastwise, and "[n]either the PMA nor the ILWU can act unilaterally to grant or deny USERRA benefits in the longshore industry. All decisions to grant or deny such benefits must be made jointly by the ILWU and PMA, with each entity having equal say." *Id*.

According to the complaint, longshoremen returning from military status are not reemployed by a single employer to a fixed position as employees would be in a traditional employment system. *Id*. ¶ 31. Instead, longshoremen return to the dispatch hall and are placed on a registered or casual work list applicable to all 80 or so PMA employers. *Id*. ¶ 31. "[Q]ualified USERRA applicants have their place and seniority on the joint longshore lists adjusted by the ILWU and PMA pursuant to the joint USERRA Policy. . . . Since adjustment on the joint lists can only be done by ILWU and PMA acting together, both are necessary parties to any USERRA investigation and resolution proceeding." *Id*.; *see also* Sundet Decl. ¶ 15 (stating that under the USERRA Policy, "members of the bargaining unit who return from military status are not reemployed by a given employer, but have their place and seniority on the work lists adjusted jointly by the ILWU and PMA through a Labor Relations Committee applying the terms of the USERRA Policy.").

The complaint alleges that members of the ILWU longshore bargaining unit have submitted and

3

continue to submit administrative USERRA complaints regarding seniority and benefits to VETS. *Id*. ¶ 30. The complaint alleges that defendants have investigated and continue to investigate and "are attempting to resolve with the PMA alone complaints that are filed by applicants for and members of the ILWU longshore bargaining unit. At the same time, Defendants are failing to treat the ILWU as a necessary party equal to that of PMA in such administrative cases involving the West Coast longshore industry, failing to give the ILWU notice of the complaints and investigations in such cases, and refusing to permit the ILWU to participate as a full party in the administrative process in such cases, contrary to ILWU's repeated request[s] for such party status and participation." *Id*. ¶ 35.

Counts 1 and 2 of the complaint seek declaratory and injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702-706 *et seq.*, to bar defendants from excluding ILWU as a party in administrative investigations and resolution procedures for USERRA complaints filed by ILWU members. Compl. ¶¶ 57-71. Count 3 of the complaint seeks a writ of mandamus pursuant to the APA and 28 U.S.C. § 1361, requiring defendants to comply with their mandatory duties under law and to treat ILWU as a "full party" in USERRA administrative cases. Compl. ¶¶ 72-78.

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction, and for failure to state a claim. Plaintiff opposes the motions, and seeks a preliminary injunction.

## LEGAL STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v.*

4

*Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## II.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III. Preliminary injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Plaintiffs seeking preliminary relief [must] ... demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 375 (emphasis in original).

## DISCUSSION

### I. Defendants' motion to dismiss

#### A. "Final agency action"

Defendants contend that this Court lacks subject matter jurisdiction over this lawsuit because the Department of Labor has not taken a "final agency action" by denying any request by ILWU for "necessary party" status in a USERRA investigation or proceeding. "[F]inality is a jurisdictional requirement to obtaining judicial review under the APA . . . ." *Fairbanks N. Star Borough v. U.S. Army Corps. of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).[2]

According to the complaint, in a letter dated February 14, 2011, ILWU requested "necessary party status" in pending and future USERRA investigations in the West Coast longshore industry. Compl. Ex. A. The next day, DOL acknowledged receipt of the request and advised that the request would be answered after being reviewed by the DOL's Solicitor's Office. Remar Decl. in Support of Preliminary Injunction, Ex. K. On March 2, 2011, DOL sent ILWU an email asking whether ILWU was seeking "employer" status. *Id.* Ex. P. ILWU sent another letter on April 1, 2011, requesting "necessary

---

[2] Citing *Veterans for Common Sense v. Shinseki*, 644 F.3d 845 (9th Cir. 2011), plaintiff asserts that "[i]t has, however, been recently confirmed that the APA's 'final agency action' requirement is not jurisdictional." Opp'n at 9:16-19. *Shinseki* does not support plaintiff's position. *Shinseki* analyzed a different question, namely whether sovereign immunity barred adjudication of constitutional claims where the constitutional challenge was not to a "final agency action." The Ninth Circuit examined the waiver of sovereign immunity contained in § 702 of the APA, and held that § 702 expressly waived immunity. "Whether the challenged delays constitute 'final agency action' is an inquiry that is relevant to Veterans's claims under the APA itself, which are addressed below. But § 704 in no way limits § 702's broad waiver of sovereign immunity with respect to suits for injunctive relief against the federal government—suits for which the APA itself is not the cause of action." *Shinseki*, slip op. at 6327. However, where claims are brought under the APA itself, federal jurisdiction exists only if the claim challenges a "final agency action." *Id.* at 6329.

6

party status" in USERRA investigations. *Id.* Ex. Q at 2-3; Garcia Decl. Ex. A. On April 13, 2011, DOL sent another letter to ILWU asking for the basis of the ILWU's request to be granted "necessary party status" in the context of a USERRA investigation, and stating that "[o]nce we receive a full and complete response to this request, then we will be better able to respond to ILWU's April 1, 2011 party request." Garcia Decl. Ex. A. According to a declaration filed by Norman Garcia, Senior Trial Attorney in the Office of the Solicitor of the DOL, as of June 13, 2011, he had not received a response to the April 13, 2011 letter.

"As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). Plaintiff argues that defendants have taken "final agency action in at least seven administrative cases filed by ILWU members, where ILWU was excluded as a party, despite the Union's repeated requests for inclusion." Opp'n at 10:3-8. Plaintiff argues that because defendants gave official notice to PMA in early June 2011 that each of the seven administrative cases was closed, defendants have engaged in a "final agency action."

The Court concludes that plaintiff has not shown that the complaint is challenging a "final agency action." The complaint alleges that ILWU made a request on February 14, 2011 to be treated as a full party in USERRA investigations and proceedings. Compl. ¶ 38, Ex. A. The evidence submitted by the parties shows that DOL has not taken a final agency action to deny this request, and indeed plaintiff's opposition does not argue otherwise. The case closures in June 2011 are not the "final agency actions" with regard to plaintiff's request to be treated as a full party in USERRA investigations, but rather simply the closings of those seven administrative cases. As defendants note, if those case closings were the agency actions challenged by plaintiff's APA claim, the relief plaintiff could seek would be to set aside the case closures. However, plaintiff does not seek to set aside those closures, but rather to be granted "necessary party status" in all future USERRA investigations concerning its members. Compl. § V. Accordingly, the Court GRANTS defendants' motion to dismiss for lack of

7

jurisdiction.[3]

### B. Failure to state a claim

Defendants contend that even if there was a final agency action, plaintiff has failed to state a claim challenging the denial of "necessary party" status because neither USERRA nor its implementing regulations recognize or provide for such status. Defendants assert that USERRA contemplates only three entities – complainant, employer, and witness – and they correctly note that there is no mention of "necessary party" in the statute or its regulations.[4]

Plaintiff's opposition essentially concedes that there is no explicit language in USERRA or its regulations regarding "necessary parties." Plaintiff has not identified any authority regarding the concept of a "necessary party" under USERRA, nor has plaintiff cited any authority for the proposition that defendants are required to involve a union in a USERRA administrative investigation or proceeding. Instead, plaintiff raises a host of arguments which all assert, in one fashion or another, that USERRA impliedly requires defendants to grant plaintiff "necessary status" in order for defendants to fulfill their obligations under USERRA.

First, plaintiff contends that in order for DOL to conduct an adequate and fair investigation of administrative complaints filed by ILWU members, ILWU must be involved as a party. Plaintiff relies

---

[3] Defendants also argue, and plaintiff does not dispute, that the other bases of jurisdiction listed in the complaint (USERRA, the Mandamus and Venue Act, and the Declaratory Judgment Act) do not confer jurisdiction. USERRA does not provide jurisdiction over plaintiff's claims because plaintiff's claim is not an "action against a State (as an employer)" or an "action against a private employer." 38 U.S.C. 4323(b)(1), (3). Mandamus jurisdiction cannot be invoked to obtain relief available under another statute. *See Piledrivers' Local Union No. 2375 v. Smith*, 695 F.2d 390, 392 (9th Cir. 1982); *see also DRG Funding Corp. v. Sec'y of Housing & Urban Dev.*, 76 F.3d 1212, 1216 (D.C. Cir. 1996) (mandamus inappropriate when party may seek relief after administrative review is final). Finally, "[t]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction." *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1154 (9th Cir. 2010).

[4] In response to defendants' arguments that USERRA requires DOL to interview and involve a complainant's "employer," plaintiff asserts that USERRA does not limit party status and participation to "employers" because the statute provides that "If the Secretary determines as a result of the investigation that the action alleged in the complaint occurred, the Secretary shall attempt to resolve the complaint by making reasonable efforts to ensure that *the person or entity* named in the complaint complies with the provisions of this chapter." 38 U.S.C. § 4322(d) (emphasis added by plaintiff). However, plaintiff's argument ignores the language immediately following "the person or entity," namely that the "person or entity" be "named in the complaint." *Id.*

8

on the following language in USERRA:

> The Secretary *shall investigate each complaint* submitted pursuant to subsection (a). If the Secretary determines as a result of the investigation that the action alleged in the complaint occurred, the Secretary *shall attempt to resolve the complaint by making reasonable efforts* to ensure that the person or entity named in the complaint complies with the provisions of this chapter.

38 U.S.C. § 4322(d) (emphasis added by plaintiff). Plaintiff argues that while USERRA says nothing about "necessary parties," "it is equally true and irrelevant that the statute does not state that DOL investigations must comply with basic due process principles, or be adequate, fair and complete before a decision is rendered." Opp'n at 12:22-25. Plaintiff asserts that agency procedures, regardless of the plain terms of the statute being administered, must comport with due process, and that DOL's exclusion of ILWU from administrative investigations violates basic due process and precludes the development of a full and fair administrative record.

As an initial matter, and as defendants note, the complaint does not allege that defendants have violated plaintiff's due process rights by failing to include plaintiff in administrative investigations and proceedings. However, even if the complaint alleged such a claim, plaintiff has not identified, and cannot identify, a property interest of which it has been deprived. *See Brewster v. Bd. of Educ. Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."). There is also no support for plaintiff's assertion that defendants cannot conduct a "full and fair" investigation without the involvement of plaintiff as a "necessary party," as the statute provides DOL with the authority to obtain the information necessary to complete its investigations, including through the use of subpoenas. *See* 38 U.S.C. § 4326.

Next, plaintiff relies on Federal Rule of Civil Procedure 19(a), "Persons Required to Be Joined if Feasible." Plaintiff concedes that Rule 19 does not "directly" apply to administrative proceedings, but argues that nevertheless the Court should be guided by Rule 19's underlying policy concerns regarding joinder of appropriate parties to achieve "just adjudication." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 90 (2005) (discussing prior version of Rule 19, which provided for joinder of parties who

9

should or must take part in the litigation to achieve a "just adjudication").[5] Plaintiff argues that given ILWU's role as joint administrator of the ILWU-PMA USERRA Policy and the joint registration/dispatch system, defendants cannot, as a practical matter, fully and fairly investigate a USERRA complaint involving the West Coast longshore industry without the ILWU's participation as a party. Plaintiff asserts that ILWU must consent to any voluntary change that might be made by PMA that would affect a members' registration or dispatch priority, and thus that ILWU is a "necessary party" to any USERRA investigation and proceeding. However, defendants respond that (1) this argument only applies to instances where the alleged USERRA violation relates to a service member's registration or dispatch priority, and there are a number of other types of employment actions that could adversely affect a service member, and more importantly, (2) if PMA is willing to make a change to the dispatch and registration priority of its employees in order to resolve a USERRA complaint, it can take efforts to obtain any necessary consent from ILWU before committing to do so.

Plaintiff also relies on inapposite case law involving motions to intervene under Rule 24. None of these cases involve USERRA administrative investigations or proceedings, and instead they address a union's right to intervene in litigation. *See Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946) (in lawsuit by returning servicemember against employer under predecessor law to USERRA, holding that union had right to intervene because at issue was whether there was a conflict between the collective bargaining agreement and the statute); *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) (holding police officers' union had right to intervene under Rule 24(a) in lawsuit filed by United States against City of Los Angeles, City's Board of Police Commissioners, and Police Department alleging pattern and practice of constitutional deprivations, and where, *inter alia*, proposed consent decree altered union's collective bargaining process). As plaintiff recognizes, the USERRA regulations provide that in a civil action seeking benefits under USERRA, "where terms in a collective bargaining agreement need to be interpreted, the court may allow an interested party to intervene in the action." 20 C.F.R. § 1002.309. However, there is no analogous USERRA regulation

---

[5] In 2007, the language of Rule 19 was amended a part of a general restyling of the Civil Rules, and the charges were intended to be stylistic only. *See* 2007 Advisory Committee Notes to Fed. R. Civ. P. 19.

10

regarding intervention by unions in administrative investigations and proceedings.

Plaintiff also contends that defendants' exclusion of the ILWU is arbitrary and capricious and an abuse of discretion because it violates the agency's own regulations. Plaintiff notes that the regulations implementing USERRA require VETS to "interview persons with information relevant to the investigation" and to "copy and receive documents from any person or employer that VETS considers relevant." 20 C.F.R. § 1002.289. Plaintiff argues that ILWU has information "relevant" to the investigation of any complaint brought by a member of its bargaining unit. However, the fact that VETS has the authority to obtain relevant information and documents does not mean that VETS is required to first grant a source of that information "necessary party" status.

Plaintiff also cites 20 C.F.R. § 1002.191, and asserts that this regulation requires VETS to "trace and reconstruct what the claimant's employment history would have been had he or she not been absent," under the "reasonable certainty" concept of the "escalator principle." Opp'n at 15:6-8. Plaintiff asserts that defendants cannot adequately "trace or reconstruct" what benefits the claimant would have obtained by talking only to the PMA, "as the PMA can only tell one side of the story." *Id.* at 15:12-13. The regulation states,

> As a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service. This position is known as the escalator position. The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events. The escalator principle requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service. Depending upon the specific circumstances, the employer may have the option, or be required, to reemploy the employee in a position other than the escalator position.

20 C.F.R. § 1002.191. Contrary to plaintiff's assertion, this regulation does not explicitly require DOJ to "trace and reconstruct" a claimant's employment history, and instead it sets forth the rights and obligations of employees and employers under the "escalator principle." Moreover, even if this regulation required DOL to "trace and reconstruct" a claimant's employment history, there is nothing in this regulation that obligates DOL to confer "necessary party" status on a union in order to do so.

Finally, plaintiff contends that by excluding ILWU, defendants are failing to comply with their own Operations Manual, and thus are acting arbitrarily, capriciously and abusing their discretion.

11

1 Plaintiff cites various chapters of the Operations Manual which state, *inter alia*, that during a USERRA
2 investigation, DOL can obtain information from unions (Chapter 6.5); that one of the purposes of a
3 USERRA investigation is to resolve complaints without resort to litigation (Chapters 3.3(3)-(4), 3.10,
4 6.10, 6.14, 7.1); and that if VETS is unable to resolve a complaint administratively, VETS is required
5 to prepare a Memorandum of Referral that includes information about "any other entities which are
6 exercising managerial discretion or are impacting upon the employment relationship, such as labor
7 organizations . . ." (Chapter 8.11(1)).  Pl's Request for Judicial Notice, Ex. A (excerpts of Operations
8 Manual).[6]

9 "Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own
10 internal operating procedures." *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487
11 (9th Cir. 1990) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).  Under
12 the *Accardi* doctrine, federal agencies are required to comply with their rules where the rules were
13 "intended primarily to confer important procedural benefits upon individuals in the face of otherwise
14 unfettered discretion . . . [or where] an agency required by rule to exercise independent discretion has
15 failed to do so." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970).

16 Here, the preface to the Operations Manual states,

17 This manual is intended to provide instruction to [VETS] staff on investigative
procedures and agency policies relating to [USERRA].  No duties, rights, benefits,
18 substantive or procedural, are created or implied by this manual, which is solely for the
benefit of the Government.  The contents of this manual are not enforceable by any
19 person or entity against the Department of Labor (DOL) or the United States. . . .

20 Preface, Operations Manual, found at http://www.dol.gov/vets/VMS/userra/userra_ops.pdf.  Plaintiff
21 does not advance any argument that the Operations Manual rules were intended primarily to confer
22 important procedural benefits upon unions, and the plain language of the Manual is to the contrary.  Nor
23 does plaintiff assert that VETS is required by rule to exercise independent discretion and that it has
24 failed to do so.

25

26

---

27 [6] Plaintiff has submitted portions of the Operations Manual as Exhibit A to Plaintiff's Request
for Judicial Notice.  Docket No. 14.  However, the excerpts filed by plaintiff do not include Chapter 7.1;
28 that portion can be found at http://www.dol.gov/vets/VMS/userra/userra_ops.pdf.

**United States District Court**
For the Northern District of California

**II.     Plaintiff's motion for a preliminary injunction**

In light of the foregoing, the Court DENIES plaintiff's motion for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss without leave to amend, and DENIES plaintiff's motion for a preliminary injunction.  Docket Nos. 23 & 30.

**IT IS SO ORDERED.**

Dated: August 22, 2011

SUSAN ILLSTON
United States District Judge